**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**PATRICK O. SMITH, Jr.,**

  **Plaintiff,**

**v.**            **No.** _____

**CHRISTOPHER A. RIDER and MARK C.
HARGROVE, in their individual and official
capacities, and THE COUNTY OF LEA, a
New Mexico Municipal Corporation,**

  **Defendants.**

## COMPLAINT

Plaintiff Patrick O. Smith, Jr., brings the following causes of action for damages against Defendants pursuant to the First, Fourth and Fourteenth Amendments of the United States Constitution, 42 U.S.C. §§ 1983 and 1988, the New Mexico Constitution, Article II, Section 10 and the New Mexico Tort Claims Act, NMSA 1978, § 41-4-1 *et seq*.

Plaintiff's claims for damages are based on the injuries inflicted upon him by defendant Lea County Sheriff's Deputy Christopher A. Rider. Plaintiff alleges that defendant Rider used excessive and unnecessary force upon him, falsely arrested and falsely imprisoned him and falsely charged him with crimes. Plaintiff further alleges that defendant Rider engaged in the unlawful conduct alleged in retaliation for Plaintiff's exercise of his protected right to freedom of speech. Plaintiff further alleges that defendants Hargrove and Lea County are liable for their failure to train, supervise and discipline defendant Rider and that defendant Lea County is liable under the doctrine of *respondeat superior* on Plaintiff's state law claims against the individual defendants Rider and Hargrove.

## PARTIES

1.    Plaintiff Patrick O. ("P.J." ) Smith, Jr. is currently and was at all times hereto a resident of Lea County, New Mexico.

2.    At all times material hereto, defendant Christopher A. Rider ("Rider")  was a resident of Lea County, New Mexico. At the time of the incident complained of herein, defendant Rider was a full-time salaried law enforcement officer employed by defendant Lea County as a Lea County Sheriff's Office ("LCSO") Sheriff's Deputy, was a public employee as that term is defined in the New Mexico Tort Claims Act (NMSA 1978, §§ 41-4-3(D) and (F)(2)), and was acting under color of law and in the course and scope of his employment. Defendant Rider is sued in his individual and official capacities.

3.    At all times material hereto, defendant Sheriff Mark C. Hargrove ("Hargrove") was a resident of Lea County, New Mexico. At the time of the incident complained of herein, defendant Hargrove was a full-time salaried law enforcement officer employed by defendant Lea County as the Sheriff of the LCSO and responsible for the policies, practices, and customs of LCSO. Defendant Hargrove was also responsible for the training, supervision, discipline, counseling, and control of LCSO deputies under his command, including defendant Rider. At all times materials hereto, defendant Hargrove was the final decision-maker and policy-maker for LCSO and defendant Lea County with respect to law enforcement matters, was a public employee as that term is defined in the New Mexico Tort Claims Act (NMSA 1978, § 41-4- 3(F)), and was acting under color of law and within the course and scope of his employment. Defendant Hargrove is sued in his individual and official capacities.

4.    Defendant County of Lea ("Lea County") is an incorporated county, a body politic and a

municipal corporation under the laws of the State of New Mexico. It is also a governmental entity and local public body as those terms are defined in the New Mexico Tort Claims Act, NMSA 1978, §§ 41-4-3(B) and (C). As such, it may be sued in its name, and it has the authority to employ law enforcement officers and to delegate to the LCSO and its Sheriff, defendant Hargrove, final policy and decision-making authority over law enforcement matters. Defendant Lea County is a political subdivision of the State of New Mexico and a "person" under 42 U.S.C. § 1983. At all times material hereto, defendant Lea County was the employer of defendants Rider and Hargrove.

## JURISDICTION AND VENUE

5. All of the material acts and omissions complained of herein occurred in Lea County, New Mexico.

6. This Court has jurisdiction over both the state and federal claims set forth herein and venue is proper in this court.

7. In connection with Plaintiff's state law claims, all of the acts complained of herein come within the scope of a waiver of immunity contained within the New Mexico Tort Claims Act, NMSA 1978, § 41-4-12 and Plaintiff has given timely written notice of the claims contained herein in compliance with the requirements of the New Mexico Tort Claims Act, NMSA 1978, §§ 41-4-16 & 18(A).

## FACTS COMMON TO ALL CAUSES OF ACTION

10. On or about June 1, 2013, Plaintiff "P.J." Smith was at a friend's home in Hobbs, New Mexico, where approximately 20 people had gathered.

11. P.J. was in the garage of the home, talking with his friends Josh Sander and Billy Martinez and the woman whose home it was, Amber Lucero.

12.     All four of these people in the garage were over the age of 21.

13.     There were alcoholic beverages in the garage.

14.     Upon information and belief, defendant Rider was dispatched to Amber's house.

15.     After arriving at Amber's house, defendant Rider entered the garage, uninvited, by ducking under the partially closed garage door.

16.     Defendant Rider immediately announced that everyone had to leave.

17.     Defendant Rider claimed, as the basis for his order, that there was underage drinking going on.

18.     P.J. said to Amber that if it were his house, he would not have let the officer into his home without a warrant.

19.     Defendant Rider heard P.J. make this statement.

20.     After hearing what P.J. said to Amber and in response to it, defendant Rider approached P.J.

21.     Defendant Rider approached P.J. in a confrontational manner.

22.     P.J. stepped back and away from defendant Rider's advance.

23.     Defendant Rider specifically ordered P.J. to leave.

24.     P.J. said he would not leave until the person whose house it was asked him to leave.

25.     P.J. then began helping Amber clean up the house.

26.     A few minutes later, P.J. and Billy Martinez left Amber's house in Billy's white GMC Sierra pick-up truck.

27.     As they drove away, Billy did not drive the truck faster than the speed limit.

28.     Defendant Rider pursued Billy's truck in his police vehicle.

29.     Billy saw defendant Rider pursuing him and pulled his truck to the side of the road and

stopped.

30.     Defendant Rider approached the driver's side of the truck.

31.     As he looked in through the driver side window, defendant Rider saw P.J. in the passenger seat and said, "There goes your smart ass over there."

32.     Defendant Rider walked around the front of Billy's truck to the passenger side.

33.     Defendant Rider opened the passenger side door and ordered P.J. to get out of the truck.

34.     P.J. told defendant Rider that he had no basis to order him from the truck.

35.     Defendant Rider repeated the order for P.J. to get out of the truck.

36.     Before P.J. could react to this order, defendant Rider unholstered his taser weapon and fired it at P.J. through the opening on the passenger side of the truck.

37.     The taser probes struck P.J. in his right side, one just below the ribs and one lower than that.

38.     The taser shock caused P.J. to suffer immense pain.

39.     The taser shock also caused P.J.'s muscles to convulse, as a result of which P.J. fell from the truck to the ground.

40.     Because of the effect of the taser shock on his muscles, P.J. was unable to protect himself from the fall.

41.     P.J.'s head struck the ground when he fell from the truck.

42.     After he fell to the ground, P.J. ended up on his right side, directly on top of the taser probes.

43.     P.J. moved his body to shift his weight off of the taser probes which were digging into his side and causing him pain.

44.     Defendant Rider yelled at P.J. to not move.

45.   While still yelling at P.J., defendant Rider triggered a second taser shock through the probes there were still attached to P.J.'s body.

46.   The second taser shock caused P.J. to suffer another round of immense pain.

47.   Defendant Rider then yelled at P.J., "This is what you get for calling me a bitch-ass mother fucker."

48.   At no time had P.J. ever called defendant Rider these words.

49.   At no time before he fired his taser at or into P.J. did defendant Rider ever give P.J. any warning that his failure to comply with defendant Rider's orders would cause P.J. to be tased.

50.   Defendant Rider immediately threatened Billy, yelling at him, "You're next."

51.   Defendant Rider handcuffed P.J. while he lay on the ground.

52.   Defendant Rider then placed P.J., handcuffed, into his police car.

53.   Billy remained in the driver seat of the truck during the incident.

54.   Despite that he had no factual basis or reasonable suspicion or probable cause to do so, defendant Rider conducted a field sobriety test on Billy.

55.   Defendant Rider allowed Billy to drive away without citing him or charging him with any traffic violation or criminal offense.

56.   Defendant Rider transported P.J. to the police station.

57.   At no time during the "stop" or before or after he arrested P.J., or later at the station, did defendant Rider conduct any kind of sobriety test on P.J.

58.   Despite that, defendant Rider claimed P.J. was intoxicated.

59.   P.J. spent the night in the drunk tank.

60.   P.J. was never searched before he was placed in the drunk tank and as a result, was able

to call his mother from his own mobile phone while incarcerated.

61. Defendant Rider brought charges of resisting arrest, evading or obstructing an officer, disorderly conduct, and concealing identity against P.J.

62. All charges brought against P.J. by defendant Rider were promptly dismissed in a manner favorable to him.

63. Defendant Rider brought the criminal charges listed above against P.J. without probable cause and for an improper reason, that is, to cover up his own misconduct and in retaliation for the Plaintiff's protected exercise of free speech.

64. Defendant Rider also attempted to bring charges against Amber Lucero, which were also promptly dismissed.

65. Upon information and belief, defendant Rider was fired the day after the incident involving his unlawful attack on and false arrest of P.J. which forms the basis of this Complaint.

66. Prior to engaging in the use of unnecessary and excessive force upon the Plaintiff, defendant Rider had a duty to critically evaluate the facts on which he would rely to support his anticipated actions and to determine if such actions were objectively reasonable and in good faith under the totality of the circumstances.

67. Defendant Rider failed to exercise his duty in these regards.

68. There was no probable cause for defendant Rider to reasonably believe that the Plaintiff had committed any offense which required or authorized him to use force upon the Plaintiff.

69. At the time that defendant Rider used force on him, the Plaintiff was not actively resisting nor did he ever actively resist defendant Rider, posed no immediate threat to

defendant Rider, was not attempting to evade arrest by fleeing, nor was he engaged in any other conduct which required, authorized or justified the uses of excessive and unnecessary force on him described in the immediately preceding paragraphs.

70.     No reasonably competent law enforcement officer, with knowledge of the totality of the circumstances as defendant Rider reasonably understood them to be, could reasonably have believed that the Plaintiff had committed any offense or engaged in any conduct which required or authorized the use of any force upon him much less the excessive and unnecessary force used upon him by defendant Rider.

71.     Defendant Rider lacked probable cause to arrest or charge the Plaintiff with or imprison him for any crime.

72.     No reasonably competent law enforcement officer, with knowledge of the totality of the circumstances as defendant Rider reasonably understood them to be, could reasonably have believed that he had probable cause to arrest or charge the Plaintiff with or imprison him for any crime.

73.     Plaintiff suffered serious and permanent physical injuries inflicted upon him by defendant Rider and has incurred reasonable and necessary medical expenses, and will continue to do so in the future, for treatment of the injuries he suffered.

74.     As a result of the defendant Rider's unlawful actions against him, Plaintiff has suffered psychological harm and emotional pain and suffering.

75.     As a result of the defendant Rider's unlawful actions against him, Plaintiff has lost wages.

76.     Defendants' acts and omissions, as described herein, were the direct and proximate cause of the injuries and damages suffered by Plaintiff, as set forth herein.

77.     Plaintiff is entitled to compensatory damages for his injuries caused by the Defendants.

78.     Defendant Rider acted in bad faith, willfully, intentionally, knowingly, maliciously and purposefully with the specific intent to deprive Plaintiff of his constitutional rights, and further acted recklessly, wantonly, oppressively and in reckless, callous and deliberate disregard of and indifference for Plaintiff's constitutional rights. As a result of the nature of this conduct, Plaintiff is entitled to recover punitive damages on his federal law claims against defendant Rider in his individual capacity.

79.      Defendant Hargrove had a duty to train, supervise and discipline defendant Rider to ensure that he did not act in violation of the federally protected rights of individuals such as the Plaintiff, or negligently or otherwise violate the New Mexico Tort Claims Act.

80.     Defendant Rider was involved in a taser incident involving an individual named Manuel Ysasi ("the Ysasi incident") on February 25, 2010.

81.     After the Ysasi incident occurred, an Assistant District Attorney ("ADA") at the Lea County District Attorney's Office wrote a letter to defendant Hargrove informing him of defendant Rider's behavior in that incident, including his misuse of his taser weapon and his unnecessary and excessive use of force, and further indicating the need for defendant Rider to be trained on the proper use of the taser weapon and the lawful use of force.

82.     Upon information and belief, defendant Hargrove received and reviewed the ADA's letter prior to the incident involving defendant Rider and the Plaintiff on which this Complaint is based.

83.     The ADA's letter should have prompted defendant Hargrove to take action to properly supervise and if found to be warranted, discipline defendant Rider for his unlawful use of unnecessary and excessive force in the Ysasi incident.

84.     Despite defendant Hargrove's receipt and review of the ADA's letter, prior to the incident involving defendant Rider and the Plaintiff on which this Complaint is based, neither he nor any other official of defendant Lea County took any action, nor was any investigation undertaken by them or at their direction, in response to, or in regard to defendant Rider's improper and unlawful actions, the need for training of him in proper police conduct, and in particular in regard to the use of the taser weapon and the lawful use of force, as related to them in that letter, or the need to discipline defendant Rider for his unlawful use of unnecessary and excessive force in the Ysasi incident.

85.      In Fenruary, 2014, a federal jury found that defendant Rider had used unnecessary and excessive force in his improper use of his taser weapon in the Ysasi incident in violation of Mr. Ysasi's Fourth Amendment right to be free from unreasonable seizures, and awarded substantial compensatory and punitive damages to Mr. Ysasi based on defendant Rider's unconstitutional conduct.

86.     Defendants Hargrove's and Lea County's failures to act in the face of knowledge of Defendant Rider's unlawful conduct involving his excessive and unnecessary use of force and the improper use of his taser weapon, as well as the obvious need for training on the use of the taser weapon and the proper use of force, constitute omissions by policymakers that manifest a deliberate indifference to the constitutional rights of individuals, rendering them liable for defendant Rider's unconstitutional actions taken against the Plaintiff.

87.     Defendant Hargrove had a duty to exercise due care in the supervision and discipline of subordinate law enforcement officers.   In addition, Defendant Hargrove had a duty to properly train, supervise and discipline subordinate law enforcement officers employed by defendant Lea County. Defendant Hargrove had a further duty to ensure that

subordinate officers of the LCSO were aware of and guided by appropriate policies and procedures so as to respect the constitutional rights of persons and avoid causing unnecessary harm to persons, including the Plaintiff. As part of those responsibilities, Defendant Hargrove had a duty to:

a) Assure that subordinate law enforcement officers employed by defendant Lea County, including Rider, received appropriate and adequate training as to the performance of their duties as law enforcement officers;

b) Inculcate appropriate policies, procedures and protocols concerning the performance of law enforcement functions by subordinate law enforcement officers of the LCSO, including Rider, concerning among other things, the use of the taser weapon and the use of force, the requirement and proper application of the principle of probable cause for arrest and charging crimes and the prohibition against the use of force, arrest and false criminal charging, or any of them, in retaliation for a person's exercise of his federally protected right to free speech;

c) Monitor and discipline subordinate law enforcement officers of the LCSO, including Rider, in order to assure that officers complied with departmental policies, procedures, and protocols, as well as showing respect for the constitutional rights of people; and,

d) Conduct meaningful and proper investigations of, and train and impose discipline where appropriate upon, subordinate law enforcement officers of the LCSO in order to insure compliance with policies and to avoid official ratification of misconduct and deprivation of constitutional rights.

87.   Prior to June 1, 2013, defendant Hargrove knew that defendant Rider had in the past

acted improperly and violated people's constitutional rights, and that without properly supervising, training, and disciplining defendant Rider, persons such as the Plaintiff would have their rights violated by Rider. Defendant Hargrove knew that defendant Rider lacked adequate training and was operating without knowledge of or in flagrant disregard for departmental policies, procedures and protocols in connection with the use of force, and in particular the use of the taser weapon. Defendant Hargrove failed to conduct an appropriate investigation into the incident involving the violation of the constitutional rights of Mr. Ysasi by defendant Rider and took no disciplinary action against him nor acted to supervise or train him as a result of his misconduct in that incident. By so doing, defendant Hargrove encouraged and condoned the wrongful acts of defendant Rider.

88.    Defendant Hargrove's actions, or failures to act, described above, constituted personal involvement by him in violating the Plaintiff's constitutional rights and causing the injuries and damages described above. In so doing, defendant Hargrove acted knowingly or with deliberate indifference to the possibility that constitutional violations would occur.

89.    The conduct of defendant Hargrove, as described above, was intentional, reckless, wanton, willful, and deliberately indifferent to the rights of the public, including the Plaintiff.

90.    The acts and omissions of defendant Hargrove were a direct and proximate cause of the deprivation of the clearly established Fourth Amendment rights of the Plaintiff, as well as the resulting injuries and damages set forth above.

91.    Defendant Lea County is liable for the acts and omissions of its final policymaker,

defendant Hargrove, that proximately caused the violation of the Plaintiff's federally protected rights.

92.   Based on their supervisory liability as alleged above, defendants Hargrove and Lea County are liable, along with defendant Rider, jointly and severally, for the compensatory damages to which Plaintiff is entitled.

93.   Defendant Hargrove's failure to act in the face of his actual knowledge of defendant Rider's unlawful and plainly incompetent actions which required training, supervision and discipline, was undertaken willfully, intentionally, knowingly, recklessly, wantonly, oppressively and in reckless, callous and deliberate disregard of and indifference for Plaintiff's constitutional rights. As a result, Plaintiff is entitled to recover punitive damages on his federal law claims against defendant Hargrove in his individual capacity.

**COUNT I**
**FIRST AMENDMENT CLAIM**
**AGAINST DEFENDANT RIDER**
**(RETALIATION FOR EXERCISE OF FREE SPEECH)**

94.   Plaintiff incorporates all preceding paragraphs as if fully stated herein.

95.   Defendant Rider used excessive and unnecessary force upon the Plaintiff in retaliation for his exercise of protected free speech, both at Amber's house and while seated in the truck after defendant Rider's traffic stop of the driver.

96.   Defendant Rider arrested the Plaintiff and charged him with crimes and imprisoned him in retaliation for Plaintiff's exercise of protected free speech and in an attempt to cover up his own unlawful conduct.

97.   Defendant Rider used excessive and unnecessary force on, arrested, falsely charged and falsely imprisoned Plaintiff because he exercised his First Amendment protected right of

freedom of speech when he spoke of protected constitutional rights to his friend while in her home and then later in Billy's truck when he questioned Defendant Rider's unlawful order to him to get out of the truck.

98.     In both cases, Plaintiff was engaged in constitutionally protected activity by making accurate, non-threatening statements.

99.     It was clearly established at the time of the incident on which this Complaint is based that any form of official retaliation for exercising one's freedom of speech, including the use of force, arrest, imprisonment and criminal prosecution, constitutes an unconstitutional infringement of that freedom in violation of protected First Amendment rights.

100.    No reasonably competent law enforcement officer, with knowledge of the totality of the circumstances as defendant Rider reasonably understood them to be, could reasonably have believed that it was lawful to retaliate against the Plaintiff by use of force, arrest, imprisonment or criminal prosecution, for the exercise of his protected right to freedom of speech.

**COUNT II**
**FOURTH AMENDMENT CLAIM AGAINST ALL DEFENDANTS**
**(EXCESSIVE AND UNNECESSARY USE OF FORCE)**

103.    Plaintiff incorporates all preceding paragraphs as if fully stated herein.

104.    Plaintiff has and had a Fourth Amendment right to be free from the excessive and unnecessary use of force.

105.    The force that defendant Rider used upon the Plaintiff was excessive and unnecessary under the circumstances.

106.    The excessive and unnecessary force used by defendant Rider upon the Plaintiff was not justified or privileged under clearly established law and constituted an unreasonable

seizure under the Fourth Amendment.

107.   More specifically, because defendant Rider could not have reasonably believed that P.J. presented a threat to his safety or the safety of others or that P.J. was actively resisting arrest or attempting to evade arrest by fleeing, defendant Rider's use of force violated the Plaintiff's clearly established Fourth Amendment rights.

## COUNT III
## FOURTH AMENDMENT CLAIM AGAINST ALL DEFENDANTS
## (UNLAWFUL SEIZURE - FALSE ARREST AND IMPRISONMENT, MALICIOUS PROSECUTION)

108.   Plaintiff incorporates all preceding paragraphs as if fully stated herein.

109.   Plaintiff has and had a Fourth Amendment right to be free from unlawful seizures arising from the defendant Rider's arrest and imprisonment of him without probable cause.

110.   No reasonably competent law enforcement officer could reasonably have believed under the circumstances that the arrest and imprisonment of the Plaintiff by defendant Rider or the false charges placed upon the Plaintiff by defendant Rider were based on probable cause.

111.   The arrest and imprisonment of the Plaintiff by defendant Rider were not justified or privileged under clearly established law and constituted an unreasonable seizure amounting to false arrest and false imprisonment under the Fourth Amendment.

112.   The false charges brought against the Plaintiff by defendant Rider were not based on probable cause but were brought for impermissible reasons, that is, to cover up his own misconduct and in retaliation for the plaintiff's protected exercise of free speech, and constituted an unreasonable seizure amounting to malicious prosecution under the Fourth Amendment.

**COUNT IV**
**STATE LAW TORT CLAIMS AGAINST ALL DEFENDANTS**
**(ASSAULT AND BATTERY, FALSE ARREST, FALSE IMPRISONMENT,**
<u>**MALICIOUS ABUSE OF PROCESS**</u>**)**

113.   Plaintiff incorporates all preceding paragraphs as if fully stated herein.

114.   Defendant Rider's excessive and unnecessary use of force against the Plaintiff constituted assault and battery under New Mexico common law.

115.   Defendant Rider's arrest and imprisonment of the Plaintiff and his bringing of false criminal charges against the Plaintiff, all without probable cause and for improper reasons, constituted false arrest, false imprisonment and malicious abuse of process under New Mexico common law.

116.   If the actions of defendants Rider and Hargrove described above were not intentional, reckless or undertaken with deliberate indifference, they were negligent.

117.   Defendant Hargrove breached his duty to train, supervise and discipline defendant Rider and committed the torts of negligent training, supervision and discipline, which proximately caused the harms that the Plaintiff suffered at the hands of defendant Rider and for which defendants Hargrove and Lea County are jointly and severally liable for compensatory damages to the Plaintiff under state law.

118.   Defendant Lea County is directly responsible to Plaintiff on his state law claims for the negligent acts and omissions of defendants Rider and Hargrove under the doctrine of *respondeat superior*.

<u>**REQUEST FOR RELIEF**</u>

WHEREFORE, Plaintiff respectfully requests this Court grant the following relief:

    1.   Compensatory damages against all Defendants jointly and severally on Plaintiff's

federal and state law claims brought against them;

2.  Punitive damages, severally, against Defendants Rider and Hargrove on Plaintiff's federal law claims brought against them in their individual capacities only – Plaintiff expressly does not seek punitive damages against Defendant Lea County or against Defendants Rider and Hargrove on his state law claims or in their official capacities;

3.  Trial by jury on all issues so triable;

4.  Attorneys' fees, litigation expenses, statutory costs, and pre- and post-judgment interest as allowed by law; and,

5.  Such other and further relief as the Court deems just and proper.

Respectfully submitted,

LAW OFFICE OF PHILIP B. DAVIS

*/s/ Philip B. Davis*
Philip B. Davis
Nicholas T. Davis
814 Marquette N.W.
Albuquerque, NM 87102
(505) 242-1904
davisp@swcp.com
davisn@swcp.com

*/s/ Michael T. Newell*
Michael T. Newell
Heidel Samberson Newell Cox & McMahon
P.O. Box 1599
Lovington, NM 88260-1599
(575) 396-5303
hsncmtn@leaco.net

*Attorneys for Plaintiff Patrick O. Smith, Jr.*